1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   CRAIGSLIST, INC.,                )
                                      )
12              Plaintiff(s),         )        No. C09-4739 SI (BZ)
                                      )
13        v.                          )
                                      )   **REPORT AND RECOMMENDATION**
14   DOE 1; CHRISTOPHER MEYER, et)        **RE PLAINTIFF'S MOTION FOR**
     al.,                             )   **DEFAULT JUDGMENT**
15                                    )
                Defendant(s).         )
16                                    )
     _____ )
17

18        On January 6, 2011, plaintiff craigslist, Inc. moved for

19   entry of default judgment against defendant Christopher Meyer.

20   Docket No. 54.   This motion was referred to me by the

21   Honorable Susan Illston on January 24, 2011.  Docket No. 63.

22   Meyer has not appeared in this action and did not respond to

23   craigslist's motion.   The following is my report and

24   recommendation for the entry of default judgment against

25   Meyer.

26                    I.   **BACKGROUND**

27        Craigslist operates and owns all rights, including

28   copyrights, to the website www.craigslist.org which allows

                              1

1   users to post classified advertisements on an online forum.[1]
2   Second Amended Complaint (SAC) ¶¶ 1, 21-22.  To restrict
3   unauthorized access to its website and services, craigslist
4   requires that users agree to its Terms of Use ("TOU").  SAC ¶¶
5   28-33.  For further protection and to enforce the TOU,
6   craigslist also employs certain security measures, such as the
7   Complete Automated Public Turing test to tell Computers and
8   Humans Apart ("CAPTCHA").  SAC ¶¶ 41-45, 51-54.  When users
9   seek access to a protected webpage, a challenge-response test
10  appears, the CAPTCHA, and if it is not timely solved, users
11  are denied access to that section of craigslist's website.
12  SAC ¶¶ 53-54.

13      Meyer operates the websites www.clbotpro.com and
14  www.craigslistbotpro.com.  SAC ¶ 84.  Some of the software
15  packages he sells from these websites allow users to
16  circumvent craigslist's CAPTCHA security measures so that the
17  posting of classifieds is automatic rather than manual.  SAC ¶
18  85.  Meyer's website, as well as the marketing of his
19  products, also use the CRAIGSLIST trademark without
20  authorization.  SAC ¶¶ 108-116.  As a result of Meyer's
21  conduct, craigslist claims that it has suffered monetary loss
22  as well as harm to its reputation and goodwill.  SAC ¶¶ 117-
23  122.

24              **II.   PROCEDURAL BACKGROUND**

25      On October 5, 2009, craigslist filed a complaint against

26

27      [1]    Craigslist has registered copyrights to its website,
28  including the account registration features, the account log-in
    features, and the post to classifieds.  SAC ¶ 67.

                            2

1 | John Doe d/b/a www.clbotpro.com and www.craigslistbotpro.com
2 | and Does 2 through 25 for: (1) copyright infringement, (2)
3 | violation of the Digital Millennium Copyright Act ("DMCA"),
4 | (3) violation of the Computer Fraud and Abuse Act, (4)
5 | violation of California Penal Code § 502, (5) trademark
6 | infringement under federal law, (6) trademark infringement
7 | under California law, (7) breach of contract, (8) inducing
8 | breach of contract, (9) intentional interference with
9 | contractual relations, and (10) fraud.  Docket No. 1.

10 | On February 26, 2010, craigslist filed a first amended
11 | complaint naming Meyer as a defendant.  Docket No. 27.  After
12 | conducting an investigation and attempting more than ten
13 | unsuccessful service attempts, craigslist was permitted to
14 | serve Meyer by e-mail.  Docket No. 34.  Craigslist served
15 | Meyer by e-mail on July 27, 2010 and August 2, 2010.  Meyer
16 | never appeared and default was entered against him on
17 | September 10, 2010.  Docket No. 35.

18 | On December 3, 2010, craigslist filed a second amended
19 | complaint and effected service of process on Meyer by e-mail.
20 | Docket No. 49, 52.  Meyer again failed to answer the complaint
21 | or otherwise defend the action.  The Clerk entered Meyer's
22 | default on December 28, 2010.  Docket No. 53.

23 | On April 6, 2011, I held a hearing on craigslist's motion
24 | for default judgment.  Craigslist appeared at the hearing, but
25 | Meyer did not.

26 | **III. DISCUSSION**

27 | **A.    Personal Jurisdiction**

28 | As an initial matter, I address Judge Illston's concern

3

1  regarding this Court's personal jurisdiction over Meyer.
2  Docket No. 63. "When entry of judgment is sought against a
3  party who has failed to plead or otherwise defend, a district
4  court has an affirmative duty to look into its jurisdiction"
5  over the parties. In re Tuli, 172 F.3d 707, 712 (9th Cir.
6  1999)(citing Williams v. Life Sav. and Loan, 802 F.2d 1200,
7  1203 (10th Cir. 1986)).

8      As the party seeking to invoke this Court's jurisdiction,
9  craigslist bears the burden of establishing that there is
10 personal jurisdiction over Meyer.  See Scott v. Breeland, 792
11 F.2d 925, 927 (9th Cir. 1986)(citing Data Disc, Inc. v. Sys.
12 Tech. Assocs., 557 F.2d 1280, 1285 (9th Cir. 1977)).
13 California's long-arm statute, Code of Civil Procedure §
14 410.10, allows the exercise of personal jurisdiction on any
15 basis consistent with the federal constitution.  A forum state
16 may exercise personal jurisdiction over a nonresident
17 defendant only if the defendant has certain "minimum contacts"
18 with the forum "such that maintenance of the suit does not
19 offend traditional notions of fair play and substantial
20 justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316
21 (1945) (internal quotations omitted).  Courts may exercise
22 either general or specific jurisdiction.  Helicopteros
23 Nacionales de Columbia S.S. v. Hall, 466 U.S. 408, 414 (1984).
24 General jurisdiction exists where a defendant's activities in
25 the state are "substantial" or "continuous and systematic,"
26 even if the cause of action is unrelated to those activities.
27 Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280
28 (9th Cir. 1977).  Where general jurisdiction is inappropriate,

4

 1  a court may still exercise specific jurisdiction if the
 2  defendant has sufficient minimum contacts with the forum state
 3  in relation to the plaintiff's cause of action.  Id.

 4      Craigslist contends this Court has specific personal
 5  jurisdiction over Meyer.  For the Court to find such
 6  jurisdiction, "1) the nonresident defendant must have
 7  purposefully availed himself of the privilege of conducting
 8  activities in the forum by some affirmative act or conduct; 2)
 9  plaintiff's claim must arise out of or result from the
10  defendant's forum-related activities; and 3) exercise of
11  jurisdiction must be reasonable."  Roth v. Marquez, 942 F.2d
12  617, 620-21 (9th Cir. 1985)(emphasis omitted).  Here, all
13  three prongs are satisfied.

14      Craigslist has demonstrated that Meyer purposefully
15  directed his activity towards California by submitting
16  evidence that he operates commercial websites that are
17  interactive and available for use, as well as actually used,
18  by California residents.  Sargent Decl. ¶¶ 3-6, 14-19, 32-33,
19  Exs. 1-7, 16-20, 33-34.  Meyer's websites used screenshots of
20  craigslist services for California cities, provided
21  demonstrative videos on how to use the software by displaying
22  California regions as an example, highlighted testimonials on
23  the website from California users, and were registered under
24  Meyer's California address.  Sargent Decl. ¶¶ 5, 21, 32-33;
25  Exs. 6, 23, 33-34.  I am satisfied that Meyer knowingly and
26  intentionally marketed his services and products to California
27  residents and knew that craigslist, a California company,
28  would suffer harm in the state.  See Sargent Decl. ¶ 3.

1    The claims at issue also arise out of Meyer's forum-
2  related activities.  Craigslist has demonstrated that "but
3  for" Meyer's actions that were aimed and targeted at a
4  California company, such as his willful violations of the
5  DMCA, craigslist would not have been injured.  See Myers v.
6  Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).
7  Lastly, the Court's exercise of jurisdiction is reasonable.
8  There is nothing in the record suggesting that it would be
9  inconvenient or unfair for Meyer to defend himself in
10  California.  Moreover, due to Meyer's purposeful contact
11  directed at California, requiring him to litigate in
12  California is not tantamount to a deprivation of due process.
13  See Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th
14  Cir. 1998).

15    In the alternative, craigslist argues that personal
16  jurisdiction exists over Meyer based on the forum selection
17  clause in its TOU.  Forum selection clauses are presumptively
18  valid.  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10
19  (1972).  The Ninth Circuit has recognized that accepting a
20  forum selection clause evidences consent to personal
21  jurisdiction in that forum.  See SEC v. Ross, 504 F.3d 1130,
22  1149 (9th Cir. 2007).  Accordingly, the Court may enforce the
23  forum selection clause unless it is unreasonable.  Zenger-
24  Miller, Inc. v. Training Team, GMBH, 757 F.Supp. 1062, 1069,
25  (N.D. Cal. 1991).

26    Here, craigslist's TOU provides that "[y]ou and
27  craigslist agree to submit to the personal and exclusive
28  jurisdiction of the courts located within the county of San

6

1    Francisco, California." SAC ¶¶ 7, 30,Ex. A. ¶ 18. Craigslist

2    contends that Meyer agreed to the TOU and therefore assented

3    to personal jurisdiction in the courts of California. I do

4    not see any basis to find that it is unreasonable or unfair to

5    enforce the terms of this clause. Accordingly, since the

6    claims raised in this matter arise from Meyer's purported

7    abuse of the website, including violation of the TOU, the

8    Court may properly exercise personal jurisdiction.

9    **B.**    **Legal Standard for Default Judgment**

10       Pursuant to FRCP 55(b)(2), the Court may enter a default

11    judgment against a party whose default has been entered. By

12    his default, Meyer is deemed to have admitted the well-pleaded

13    averments of the complaint except those as to the amount of

14    damages. FRCP 8(b)(6). The decision to grant or deny a

15    default judgment under FRCP 55(b) is within the discretion of

16    the Court. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.

17    1986).

18       A court may not enter default judgment against an

19    unrepresented minor, an incompetent person, or a person in

20    military service. See FRCP 55(b)(2); 50 App. U.S.C. § 521.

21    Here, craigslist has satisfied me that Meyer is not a minor or

22    incompetent person, and that the Servicemembers Civil Relief

23    Act does not apply to him. Docket 67-68; Docket 81, Poh Decl.

24    ¶¶ 5-11, 15-16.

25       Craigslist claims that Meyer's conduct violated the

26    DMCA. Under § 1201(a)(2), craigslist must prove: "(1)

27    ownership of a valid copyright in a work (2) effectively

28    controlled by a technological measure, which has been

circumvented, (3) that third parties can now access, (4) without authorization, in a manner that, (5) infringes or facilitates a right protected by the Copyright Act, because of a product that (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure." Chamberlain Group, Inc. v. Skylink Tech., Inc., 381 F.3d 1178, 1203 (Fed. Cir. 2004).

Here, the well-pleaded facts which Meyer has admitted by defaulting, establish that craigslist owns valid copyrights in its website and the content within. SAC ¶¶ 60-67, 139. The content is protected by craigslist's CAPTCHA security measures that were circumvented by the products sold by Meyer which allowed users to have unauthorized access to craigslist's copyrighted works. SAC ¶¶ 140, 141. These products had no significant purpose or use other than to circumvent craigslist's security measures and Meyer designed and marketed the products for these purposes. SAC ¶¶ 84-95, 96-99. Accordingly, I find that craigslist has established that Meyer violated § 1201(a)(2) of the DMCA.

Craigslist has also established that Meyer violated the Lanham Act. See 15 U.S.C. §§ 1114, 1125(a), and 1125(d). Craigslist owns four registrations in the CRAIGSLIST mark. SAC ¶ 70. Meyer, without authorization, used and displayed the CRAIGSLIST mark on his websites and in sponsored link advertisements. SAC ¶¶ 108-112. The use of craigslist's mark

1  is likely to create consumer confusion and deceive users into
2  wrongfully believing that Meyer's products and services are
3  associated with, affiliated, originate from, connected to,
4  sponsored by, or endorsed by craigslist.  SAC ¶¶ 108-116.
5  Moreover, Meyer used the CRAIGSLIST mark deliberately to
6  profit from craigslist's goodwill and reputation.  SAC ¶ 116.[2]

7  **C.   Remedies**

8      Having determined that default judgment should be
9  granted, the only remaining issue is the relief available to
10 craigslist.  See 3A Entm't Ltd. v. Constant Entm't, Inc., 2009
11 WL 248261 at *6 (N.D. Cal. 2009).  Craigslist seeks the
12 following remedies from the Court: (1) a permanent injunction;
13 (2) an order transferring the domain names of Meyer's websites
14 to craigslist; (3) monetary damages; and (4) attorneys' fees
15 and costs.

16      1.   Injunctive Relief

17      To prevent Meyer from continuing his unlawful conduct,
18 craigslist asks the Court to issue a permanent injunction.[3]
19 Both the DMCA and the Lanham Act give courts the power to
20 grant reasonable injunctions when necessary to prevent
21 violations of the statutes.  See 17 U.S.C. § 1203(b)(1); 15
22 U.S.C. § 1116(a).  Here, I find that craigslist has shown that
23 Meyer will continue to cause irreparable harm to its business

24 _____

25      [2]    I do not discuss craigslist's other claims against
26 Meyer because the remedies it seeks stem from only the DMCA and
   the Lanham Act.

27      [3]    Courts are permitted to issue injunctions as part of
28 default judgments.  See Elektra Ent. Group Inc. v. Crawford,
   226 F.R.D. 388, 393-94 (C.D. Cal. 2005).

1  and reputation unless he is restrained.  Accordingly, I
2  recommend that the Court grant craigslist's request for
3  injunctive relief (Docket No. 58 at ¶ B) except for paragraph
4  (m).

5          2.    Transfer of Domain Names

6          Craigslist also seeks an order from the Court directing
7  the domain name registrar to transfer the domain names used by
8  Meyer to craigslist.  Such an order would be honored by the
9  domain name registrar under The Uniform Domain Name Dispute
10 Resolution Policy.  See Sargent Decl. ¶ 19, Ex. 14 at ¶ 3(b)
11 (the domain name registrar will cancel, transfer, or otherwise
12 make changes to domain name registrations when it receives a
13 court order requiring such action).  Based on the likelihood
14 that Meyer will continue his unlawful conduct, I find that
15 such an order would also be appropriate in this case and
16 recommend that craigslist's request for the transfer of
17 Meyer's websites, www.clbotpro.com and
18 www.craigslistbotpro.com, be granted.  See e.g., Zynga Game
19 Network, Inc. v. John Does 1-5, 3:09-cv-05301 JSW, Docket No.
20 39 (N.D. Cal. Aug. 25, 2010)(ordering the transfer of domain
21 names).⁴

22 ///

23

24         ⁴      Craigslist's proposed order seeks the transfer of not
   only these websites, but also any other websites operated by
25 Meyer that host "craigslist related content."  Docket No. 58 at
   4.   Craigslist does not explain why this broad request is
26 needed, and it is not clear how the domain name registrar will
   be able to comply with such a nonspecific order.  Accordingly,
27 I recommend that craigslist's request be limited to only the
   transfer of websites owned by Meyer that are at issue in this
28 litigation: www.clbotpro.com and www.craigslistbotpro.com.

1    2.    <u>Monetary Damages</u>

2        In its request for monetary damages, craigslist first
3    asks the Court for statutory damages under the DMCA.  The
4    statute authorizes courts to award damages "for each violation
5    of section 1201 in the sum of not less than $200 or more than
6    $2500 per act of circumvention, device, product, component,
7    offer, or performance of service, as the court considers
8    just."  17 U.S.C. § 1203(c)(3)(A).  Courts have wide
9    discretion in determining the appropriate amount of statutory
10   damages and should consider what is reasonable under the
11   particular circumstances of the case.  See Craigslist, Inc. v.
12   Hubert, 5:08-CV-05067-JW at *6 (N.D. Cal. Apr. 15 2010)(citing
13   Los Angeles News Serv. v. Reuters Television Intern., Ltd.,
14   149 F.3d 987, 996 (9th Cir. 1998).

15       Craigslist's request for statutory damages is based on
16   the software programs and CAPTCHA credits sold by Meyer.
17   According to craigslist, using the software with the credits
18   allows individuals to bypass craigslist's access controls to
19   reach copyright protected portions of its website.  Each such
20   occurrence is a DMCA violation because it is an "act of
21   circumvention."  From documents obtained through third party
22   discovery, craigslist submits evidence that Meyer has sold at
23   least 1448 bundles of CAPTCHA credits in various amounts which
24   adds up to a total of 2,873,500 credits.[5]  Sargent Decl. ¶ 9-
25   10, Exs. 6-7.  Meyer also sold 549 software programs that
26   would allow users to use the CAPTCHA credits.  Id.  Craigslist

27   _____

28        [5]    Craigslist has made no showing of how many of these
     credits were actually used.

                                11

1  seeks damages between $200 and $2500 for each of these sales
2  which amounts to a statutory damages award range of about $575
3  million to $7.2 billion.

4       Such an exorbitant award is problematic for several
5  reasons.  For one, it would offend the "canon that [courts]
6  should avoid endorsing statutory interpretations that would
7  lead to absurd results."  <u>Arista Records LLC v. Lime Group</u>
8  <u>LLC</u>, 2011 WL 832172 at *3 (S.D.N.Y. 2011)(citations
9  omitted)(court rejected plaintiff's request to find a large
10 number of infringements under the Copyright Act that would
11 potentially result in a statutory damages award of billions or
12 trillions of dollars); <u>see</u> <u>also</u> <u>Stockwire Research Group, Inc.</u>
13 <u>v. Lebed</u>, 577 F.Supp.2d 1262, 1267 ("the Court does not
14 believe Congress, in enacting the DMCA legislation,
15 authorized, nor intended, the requested windfall of between
16 [approximately $29.5 million to $295 million] in statutory
17 damages, on the basis of three internet uploads."  Similar to
18 the plaintiffs in <u>Arista Records</u> and <u>Stockwire Research Group</u>,
19 craigslist seeks a broad interpretation of the DMCA's "each
20 violation" language that could produce billions of dollars in
21 damages.  This too would be an absurd result that was not
22 intended by Congress, particularly considering the factors
23 involved in this case.

24       These factors include (1) whether craigslist's actual
25 damages bear a "plausible relationship" to the statutory
26 damages requested, and (2) if the damages award deters Meyer
27 as well as other defendants from violating the DMCA rather
28 than just resulting in a windfall for craigslist.  <u>See</u> <u>Adobe</u>

1   Systems, Inc. v. Tilley, 2010 WL 309249 at *5 (N.D. Cal.

2   2010)(explaining that courts in the Northern District have

3   considered the above factors when determining the appropriate

4   amount of statutory damages under trademark infringement

5   claims).   Courts that have evaluated statutory damages under

6   the DMCA, including in cases where craigslist was the

7   plaintiff, have also taken this into consideration.   See,

8   e.g., Craigslist, Inc. v. Hubert, 5:08-CV-05067-JW at *7 (N.D.

9   Cal. Apr. 15 2010)("an award of statutory damages in the range

10  that plaintiff initially requested, between [$20 million and

11  $250 million] would be vastly disproportional to the actual

12  costs that plaintiff alleges...").   Similar to Hubert,

13  craigslist in this case seeks billions of dollars in damages

14  even though the most it can muster to allege as its actual

15  damages is an amount "in excess of $5,000 per year."   Docket

16  No. 49 at ¶ 119.   There is no "plausible relationship" between

17  these two polar opposite amounts.   Rather, the disproportional

18  nature between actual damages and statutory damages only

19  results in a windfall for craigslist.   Even if the Court

20  considers Meyer's profits from his scheme, which craigslist

21  has shown to be $315,938.61, there is still a significant

22  discrepancy between this amount and the requested statutory

23  damages award.   Moreover, I find that a significantly lower

24  award would still be sufficient in deterring Meyer, as well as

25  other individuals like him, from violating the DMCA.[6]

26

27  _____

    [6]   Craigslist argues that if its request for about $575
    million to $7.2 billion in statutory damages is determined to
28  be excessive, the Court may, in the alternative, award damages
    based on Meyer's offer to sell 50,000 CAPTCHA credits.   This

                                13

1       Thus, craigslist's request for an award of millions or
2    billions of dollars is inappropriate for this case.  Pursuant
3    to the Court's discretion in setting statutory damages, I
4    recommend an award based on the number of software programs
5    and bundle plans sold by Meyer (1,997),[7] with the minimum
6    statutory damages amount ($200) being awarded for the lowest
7    bundle plan (1000 CAPTCHA credits) and the maximum statutory
8    damages amount ($2500) being awarded for the highest bundle
9    plan (50,000 CAPTCHA credits).  Under this formula, as Meyer's
10   conduct becomes more malicious and egregious with each
11   increase of CAPTCHA credits per bundle, craigslist is
12   correspondingly awarded higher damages until the maximum
13   statutory damages award is reached for Meyer's biggest offers
14   of 25,000 and 50,000 CAPTCHA credits.  For each sale of the
15   software program, I recommend assessing a statutory damages
16   award of $1000.  Following these guidelines, which are
17   outlined in the charts below, I recommend that the Court award
18   craigslist statutory damages in the amount of $1,130,700.00.
19   ///
20   ///
21   ///
22   ///
23   ///
24

25   would result in an award ranging from about $10 million to $126
26   million.  But, for the same reasons just discussed, I find that
     such a damages award would also be excessive under these
     circumstances.
27

28       [7]    Meyer sold 549 software programs and 1,448 bundle
     plans of CAPTCHA credits.

14

| Bundle Plans for CAPTCHA Credits | Number Sold | Statutory Damages for Each Plan Sold | Total Statutory Damages |
|---|---|---|---|
| 1000 Credits Plan | 977 | $200 | $195,400 |
| 3000 Credits Plan | 343 | $600 | $205,800 |
| 5000 Credits Plan | 82 | $1000 | $82,000 |
| 10,000 Credits Plan | 33 | $2000 | $66,000 |
| 25,000 Credits Plan | 11 | $2500 | $27,500 |
| 50,000 Credits Plan | 2 | $2500 | $5,000 |
| **TOTAL** | **1448** | **N/A** | **$581,700.00** |

| Software Program | Number Sold | Statutory Damages for Each Program Sold | Total Statutory Damages |
|---|---|---|---|
| CAPTCHA King Add-On | 541 | $1000 | $541,000 |
| CAPTCHA King | 8 | $1000 | $8,000 |
| **TOTAL** | **549** | **N/A** | **$549,000.00** |

Craigslist also seeks a monetary award under the Lanham Act in the form of Meyer's profits.[8]  See 15 U.S.C. § 1117(a). The burden is on craigslist to prove Meyer's sales while he must prove the costs or deductions he is claiming.  Id.  Here, craigslist submits evidence that shows Meyer generated $315,938.61 in revenues by selling the infringing products on his websites.  Sargent Decl. ¶¶ 5-12, Exs. 6, 7.

Meyer, as a result of his default, did not offer any

---

[8]  An award of profits is appropriate where a plaintiff is able to show that the defendant's violation was deliberate and willful.  See Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1182 (11th Cir. 1994).  Here, craigslist made that allegation, and by defaulting, Meyer exposed himself to an award of his profits.  Docket No. 49 at ¶ 178.

15

1   evidence about costs or deductions.  When faced with the task
2   of analyzing profits involving defendants in default, some
3   courts have held that "[d]oubts regarding the actual amount of
4   profit received are to be resolved against the infringer."
5   Allergan, Inc. v. Mira Life Group, Inc., 2004 WL 2734822 at *4
6   (C.D. Cal. 2004) (citations omitted).  "Where an infringing
7   defendant does not provide evidence from which the court can
8   derive the total profit by deducting costs from revenues, the
9   court may award the entirety of revenue as profit in a
10  trademark infringement case."  Id. (citations omitted).  I
11  recommend the same procedure be followed here and craigslist
12  be awarded $315,938.61 in damages for the profits made by
13  Meyer.  Adding this amount to the recommended statutory
14  damages award of $1,130,700.00 results in $1,446,638.61 of
15  total monetary damages for craigslist.

16          3.   Attorneys' Fees and Costs

17          Craigslist asks the Court to award $233,992.17 in
18  attorneys' fees and $3,673.49 in costs for its work in this
19  matter.[9]  The DMCA authorizes courts, in their discretion, to
20  award reasonable attorneys' fees and costs to the prevailing
21  party.  17 U.S.C. § 1203(b)(5).  Such an award is also
22  permissible under the Lanham Act where the infringement is
23  malicious, fraudulent, deliberate, or willful, which
24  craigslist has shown to be the case for Meyer's conduct.  See
25  Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1384 (9th
26  Cir. 1984).

27  _____
        [9]    All of counsel's charged fees already reflect a 10%
28  discount that was provided to craigslist.

                            16

1     To determine the reasonable amount of attorneys' fees,
2  courts should "calculate the 'lodestar figure' by taking the
3  number of hours reasonably expended on the litigation and
4  multiplying it by a reasonable hourly rate." Fischer v. SJB-
5  P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000)(citing Hensley
6  v. Eckerhart, 461 U.S. 424, 433 (1983)); Crommie v. State of
7  Cal., 840 F.Supp. 719, 724-25 (N.D. Cal. 1994)(establishing
8  the lodestar method as the proper method of calculation for
9  attorneys' fees under state law).[10]

10          i.    Reasonable Hours Expended

11     Courts begin by determining whether the number of hours
12  expended litigating this matter was reasonable in light of the
13  work performed and the context of the case. See McGrath v.
14  County of Nev., 67 F.3d 248, 254 (9th Cir. 1995). If the
15  number of hours was unreasonable, courts may exclude any hours
16  that are excessive, redundant, or otherwise unnecessary.
17  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

18     Here, counsel initially billed 402.5 hours and
19  $112,798.89 for its work in the case up until its motion for
20  default judgment was referred to me. Judge Ware previously
21  warned counsel that its billing practices, in light of the
22  procedural posture of the cases involving craigslist, were
23  inappropriate. Craigslist, Inc. v. Hubert, 5:08-CV-05067-JW

24

25  [10]    Courts must review detailed time records to determine
    whether the hours expended on a matter were reasonable or
26  excessive, and they must also determine the reasonable hourly
    rate by looking to "the rate prevailing in the community for
27  similar work performed by attorneys of comparable skill,
    experience, and reputation." Chalmers v. City of L.A., 796
28  F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on
    other grounds, 808 F.2d 1373 (9th Cir. 1987).

17

at *9 (N.D. Cal. Apr. 15 2010).  In that case, Judge Ware
reduced counsel's request for fees by half, from $81,965.75 to
$40,982.88.  Id.  I do not recommend halving counsel's pre-
referral fees because I am satisfied that substantial fees and
costs were reasonably expended on such tasks as identifying
Meyer, suing him and negotiating with him.  I have cautioned
counsel that as they file more of these suits, they will be
expected to make every effort to minimize high fees during the
early stages of litigation where no responsive pleadings or
motions have been filed.[11]

    After Judge Illston's referral, counsel billed an
additional 341.4 hours and $121.193.28 in fees.  Counsel
explains that these additional hours were necessary to prepare
supplemental briefing required by my default judgment
scheduling order.  Considering the context of this case and my
order, I find that the amount requested is unreasonable.  My
order required craigslist to "file any additional authority it
has in support of its position that this Court has personal
jurisdiction over defendant..."  Docket No. 64.  Rather than
abiding by this order and filing supporting "authority,"
counsel filed a binder that was nearly 6 inches thick and
weighed over 12 pounds which contained mostly exhibits in

---

[11]      There were some questionable billing practices by
counsel in this case: (1) billing approximately 18.5 hours to
draft the initial complaint in this matter even though it is
nearly identical to the more than 20 other similar complaints
craigslist has already filed before this Court; (2) billing
approximately 19 hours in connection with one administrative
motion to seal; and (3) billing a significant amount of hours
to correct mistakes made by counsel, such as the accidental
filing of two tables of authorities in connection with a brief
and the inclusion of incorrect pages as part of an exhibit.

1 | support of their showing of personal jurisdiction.[12]  I have
2 | never seen such "overkill" even in a highly contested motion.
3 | A declaration from counsel summarizing many of the redundant
4 | exhibits could have been sufficient.  My review of counsel's
5 | billing records shows that nearly 90 hours were spent
6 | researching and drafting the supplemental brief regarding
7 | personal jurisdiction.  This too is unreasonable, especially
8 | considering counsel had addressed this issue earlier as part
9 | of another case before this Court.  <u>See</u> <u>Craigslist, Inc. v.</u>
10 | <u>Naturemarket, Inc.</u>, 694 F.Supp.2d 1039 (N.D. Cal. 2010).  In
11 | the context of this case, I find that no more than 50 hours in
12 | associate time and 25 hours in paralegal time should have been
13 | spent in complying with my order.  The remaining 266.4 hours
14 | were unnecessary.  The associates working on this case had
15 | billing rates of $365.00, $375.00, and $525.00 per hour.
16 | Using the average of these three rates ($422.00 per hour) and
17 | the paralegal's average billing rate ($202.50 per hour), I
18 | recommend awarding counsel $26,162.50 for their work on the
19 | supplemental briefing in this matter, for a total fee award of
20 | $138,961.39.

21 |            ii.  Hourly Rate

22 |     In support of its hourly rate, counsel submits a
23 | declaration outlining each timekeeper's experience and
24 | attesting that the hourly rates charged by counsel are
25 | comparable to those of other attorneys in the community

26 |
27 |       [12]    Twenty days later, counsel filed an evan bigger
    binder that was also in response to my order.  Taken together,
28 | counsel filed nearly 12 inches of documents weighing almost 25
    pounds after Judge Illston's referral.

1  practicing in the same field.  McDougall Decl. ¶¶ 23-28; 32.
2  I am satisfied that the hourly rates charged by craigslist's
3  attorneys are reasonable for their level of experience.
4              iii.  Costs
5       With respect to costs, craigslist seeks $3,673.49 from
6  Meyer.  This total reflects "messenger and service costs of
7  $854.43, private investigator costs of $32.40, legal research
8  fees of $345.89, professional service fees of $1,184.77,
9  electronic discovery database hosting fee of $696.00, and
10  filing fees of $560.00."  McDougall Decl. ¶ 31.  I am
11  satisfied that the costs incurred by counsel are reasonable
12  and they should be granted in the amount requested.

### IV.  CONCLUSION

14       For the foregoing reasons, I recommend that craigslist's
15  motion for default judgment be **GRANTED IN PART AND DENIED IN**
16  **PART.**
17  Dated: April 25, 2011

                                   Bernard Zimmerman
                                   United States Magistrate Judge

G:\BZALL\-REFS\CRAIGLIST V. DOE 1, et al\PFT75.wpd